IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| TYCO HEALTHCARE GROUP LP AND<br>UNITED STATES SURGICAL CORP., | §<br>§<br>§ | |
| *Plaintiffs*, | § | Civil Action No. 9:09-CV-176 |
| | § | |
| v. | § | |
| | § | JUDGE KEITH F. GIBLIN |
| APPLIED MEDICAL RESOURCES CORP., | §<br>§ | |
| *Defendant*. | § | |

## MEMORANDUM ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Tyco Healthcare Group LP originally filed suit against Defendant Applied Medical Resources Corporation in 2006 claiming infringement of certain United States patents relating to valve assemblies.[1] *See* 9:06-cv-151. After a dispute over ownership in 2009, United States Surgical Corporation was added as a plaintiff and the instant new case was filed. In the new case, Tyco and USSC (collectively "Tyco") accused the products already at issue in the -151 case, and added allegations regarding products Applied had begun selling that were supposedly modified versions of the previously accused products.

Trial was held in March 2010 regarding the original accused products, with trial regarding the new accused products set for 2011. Relevant to this motion, the jury in the March 2010 case

---

[1] United States Patent Nos. 5,304,143, 5,685,854, 5,603,702, and 5,895,377. These patents are often referred to by the inventor's name, rather than the patent number, in their motion papers—i.e., the "Green patents" (the '143 and '854 patents), and the "Smith patents" (the '702 and '377 patents).

found that claims 12 and 13 of the Green '143 patent were invalid as obvious. Doc. # 105. No other Green patent claims were submitted to the jury, on either the question of infringement or invalidity.

Applied now moves for summary judgment of invalidity of the currently asserted claims of the Green patents—claims 14 and 31 of the '143 patent and claim 4 of the '854 patent—on collateral estoppel grounds, arguing that these three claims are directed to the same basic invention previously found invalid for obviousness. The court previously entered an order stating that the motion was granted for the reasons to be discussed in a forthcoming memo. Doc. # 306. This memorandum explains the reasons for granting Applied's motion.

## I. BACKGROUND

The parties are well-familiar with the background and procedural history of this case[2], and the court will not recite them again here.

Briefly, the Green patents—the '854 patent is a continuation of the '143 patent—both describe a trocar valve assembly adapted for introduction of an elongated object into a patient's body with multiple valves. The question of whether claims 12 and 13 of the '143 patent were invalid as obvious was submitted to the jury. The jury in the March 2010 case was instructed as follows:

> Applied contends that Claims 12 and 13 of the '143 patent would have been obvious to a person of ordinary skill in the art at the time the invention was made in light of one or more of the following prior art references. The following are the prior art references you are able to consider:
>
> (1) United States Patent No. 2,328,948 to Bourke;
>
> (2) United States Patent No. 5,395,342 to Yoon; and

---

[2] See, e.g., 9:06-cv-151, Order Granting Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. # 255]; 9:09-cv-176, Order Granting Defendant's Motion to Strike [Doc. # 57].

    (3)  United States Patent No. 4,655,752 to Honkanen.

  In addition, you may also consider the additional prior art that was presented which may or may not show the state of the art and common knowledge to those in the field.

Doc. # 100 at 12-13. The jury found both claims obvious, Doc. # 105 at 2, and the court denied Tyco's motion and renewed motion for judgment as a matter of law as to non-obviousness. Doc. # 138 at 1-3.

## II. SUMMARY JUDGMENT STANDARD

  A party may move for summary judgment on all or part of a claim. Fed. R. Civ. P. 56(a). A summary judgment motion should be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

  The party moving for summary judgment under Fed. R. Civ. P. 56 has the burden of demonstrating that no material fact issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). If the moving party meets this burden, then the non-moving party, must bring forth affirmative evidence in order to defeat the summary judgment motion. *Id.* at 257, 106 S. Ct. at 2514. The non-moving party, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

  Only a genuine dispute over a material fact—a fact which might affect the outcome of the suit under the governing substantive law—will preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S. Ct. at 2510. The dispute in this case is genuine if the evidence is such that a fact-finder, utilizing the proper evidentiary standard, could render a decision in the non-moving party's favor. *See id.* at 255, 106 S. Ct. at 2514 ("[D]etermination of whether a given factual dispute requires

submission to a jury must be guided by the substantive evidentiary standards that apply to the case."). Rule 56(c) permits the parties to support their positions by submitting materials that include "depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, [or] interrogatory answers . . . ." Furthermore, the court must view all facts and the inferences to be drawn from them in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356. However, only *reasonable* inferences in favor of the non-moving party can be drawn from the evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

### III. DISCUSSION

Applied argues that summary judgment is appropriate because the previously adjudicated invalidity of claims 12 and 13 of the Green '143 patent precludes Tyco from now contesting the invalidity of claims 14 and 31 of the Green '143 patent and claim 4 of the Green '854 patent. For the reasons discussed below, the court agrees.

**A.     Applicable law on collateral estoppel**

The application of general collateral estoppel will be governed by regional circuit law, while Federal Circuit law will apply to those issues unique to patent law. *See, e.g., Pharmacia & Upjohn Co. v. Mylan Pharmas., Inc.*, 170 F.3d 1373, 1381 n.4 (Fed. Cir. 1999).

Collateral estoppel is a question of law, and is premised on the concept that after "an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Stripling v. Jordan Prod. Co., LLC*, 234

F.3d 863, 868 (5th Cir. 2000) (internal quotation omitted). Collateral estoppel, or issue preclusion[3], is appropriate where: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005).

> Where obviousness is the basis for the prior invalidity holding, an inquiry into the identity of the validity issue is more properly phrased in terms of the factual inquiries mandated by *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S. Ct. 684, 15 L.Ed.2d 545 (1966) as a prerequisite to such a validity determination. Thus, the inquiry should be whether the nonlitigated claims present new issues as to the art pertinent to the nonlitigated claims; as to the scope and content of that art; as to the differences between the prior art and the nonlitigated claims; and as to the level of ordinary skill in that art. If none of these inquiries raises any new triable issues, then the obviousness determination in the prior proceeding should be equally applicable to the nonlitigated claims.
>
> Perhaps the most convenient way to approach a determination of these issues is . . . to compare the litigated and nonlitigated claims. If they are of identical scope, it readily follows that no new issues bearing on the obviousness determination are presented. On the other hand, such a comparison may reveal some differences of a substantive nature. In that event, it will be necessary to go a step further and determine whether those differences are of a kind that would have been itemized in a *Graham* analysis as a difference between the claim and the prior art, or whether it was known in the prior art and is only a part of the claimed combination as a whole that provides the context in which the obviousness determination is made. If it is only of the latter character, i.e., it is known in the prior art and does not alter the issue as to the differences between the claimed subject matter and the prior art, it is still necessary to assess the importance of the difference to the combination as a whole since it is from that standpoint that the obviousness determination must be made.

*Westwood Chem., Inc. v. United States.* 525 F.2d 1367, 1375 (Ct. Cl. 1975).[4]

---

[3]There are two related doctrines of preclusion: claim preclusion, also referred to as *res judicata*, and issue preclusion, also referred to as collateral estoppel. *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 273 (5th Cir. 2009). The phrases "collateral estoppel" and "issue preclusion" are used interchangeably in this Order.

[4]The Federal Circuit has adopted as precedent the decisions of the Court of Claims and the Court of Customs and Patent Appeals. *South Corp. v. United States*, 690 F.2d 1368 (Fed. Cir. 1982).

In other words, the court first looks to whether the claims not asserted in the March 2010 trial are of substantially identical scope to the claims asserted in that trial. *See Interconnect Planning Corp. v. Fell*, 774 F.2d 1132, 1136-37 (Fed. Cir. 1985) (citing *Westwood* and framing the question as one of "substantial identity"). "[S]ubstantial identity between claims, a matter of claim interpretation, is a question of law." *Id*. at 1138 n.3. If they are, collateral estoppel applies assuming that the issue was actually litigated in the March 2010 trial and that determination was necessary to the decision.

**B.     The identical issue was previously adjudicated**

    1.     *Claims 14 and 31 of the '143 patent*

The court concludes that the same issue—validity of Claims 14 and 31 of the '143 patent—was previously adjudicated when the jury in the March 2010 trial found that Claims 12 and 13 of the '143 patent were invalid as obvious.

Claim 14 of the '143 patent depends from invalidated Claim 13, and adds only the following limitation to Claim 13: "wherein said proximal end of said first and second valve members is attached to and supported by an annular ring." This is not substantively different from Claims 12 and 13—not only does the '143 specification place no real emphasis on the annular ring and fails to suggest that the ring provides any inventive advantage[5], the prior art used to invalidate Claims 12 and 13 discloses the attachment of the valves to an annular ring (as recited in the additional limitation of Claim 14)[6]. Finally, the court notes that Plaintiffs themselves, in response to an

---

[5]*See, e.g.*, '143 patent, 5:42-43 and 52-53; 4:53-55; 6:40-42.

[6]*See, e.g.*, Honkanen patent at 3:33-35 and 53-56.

interrogatory that asked them to state the factual basis for their belief that the '143 patent claims were not invalid for obviousness over Yoon and Honkanen, did not mention any limitation of Claim 14.

Claim 31 of the '143 patent depends from Claims 26-30 of the '143 patent. Claim 26 differs from Claim 12 of the '143 patent only insfoar as Claim 26 recites the means to facilitate expansion in fairly broad structural terms while Claim 12 uses a means-plus-function format. This difference in language does not raise a new issue of obviousness; further, the March 2010 jury was expressly instructed that the structure corresponding to the means clause in Claim 12 was the fingers 78 described in the '143 patent specification, which is the same structure encompassed by the means to facilitate expansion clause in Claim 26. Dependent Claims 27-30 add only additional description regarding features of the projecting members, which apply equally to the corresponding structure of the Claim 12 means clause (fingers 78). The legs 88 of Yoon and the fingers 27 of the Bourke reference also satisfies the additional limitations of these claims. *See, e.g.*, Yoon at Figs. 5 and 6, 5:56-62; Bourke at Figs. 2 and 5, 4:12-22.

   2.  *Claim 4 of the '854 patent*

Claim 4 of the '854 patent likewise raises no new issues of obviousness. As the parties in this case are well-aware, the claims of the '854 patent were copied from an Applied patent to provoke an interference and, as such, use somewhat different terminology than the '143 patent. Claim 4 depends from Claim 1 of the '854 patent, which recites a trocar assembly—as opposed to the valve assembly of the '143 patent—with an elastomeric septum and means for expanding the orifice of the septum. These elements are substantially identical to the elements recited in now-invalidated Claim 12 of the '143 patent .

The septum of the '854 patent, Claim 1 is no different from the first valve member of the '143 patent, Claim 12. The means clause of both claims refers to fingers 78 as the corresponding structure. Claim 1, insofar as it does not include certain limitations of Claim 12 (i.e., the housing and second valve member elements), is actually broader than Claim 12. A broader claim raises no new issues for an invalidity analysis. *See Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007).

Claim 4 of the '854 patent adds the housing element of Claim 12 of the '143 patent to the assembly of Claim 1 of the '854 patent, and recites specific "seating portions" for attaching the septum valve to the housing. These portions are positioned radially outward of the valve orifice, and axially spaced from the orifice. These do not raise any additional differences over the prior art: as noted above, Claim 12 of the '143 patent already included the housing element, and the invalidated claims also recited that the first valve was at least partially within the second valve. In other words, the perimeter of the first valve (the seating portions) had to be spaced axially from the orifice.

C. **The issue was actually litigated in the March 2010 trial and determination was necessary to the decision**

Neither of these elements can reasonably be disputed. Given the quality of counsel on both sides of the case, the length of time the case was pending, the multiple claim constructions and extended motion practice, and the extensive discovery process, Plaintiffs had a full opportunity to present evidence on the validity Claims 12 and 13 at the March 2010 trial. Plaintiffs, in fact, proceeded at trial from the premise that the validity of '143 patent Claims 12 and 13 were the only issue to be tried with respect to the Green patents. Adjudication of the obviousness issue was clearly necessary to the jury's verdict in the March 2010 trial; it *was* the decision.

## IV. CONCLUSION

Because the previously adjudicated invalidity of claims 12 and 13 of the Green '143 patent precludes Tyco from now contesting the invalidity of claims 14 and 31 of the Green '143 patent and claim 4 of the Green '854 patent, summary judgment in Applied's favor is appropriate.

**SIGNED this the 4th day of September, 2013.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE